IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 10-cv-02759-REB-BNB

DARLEAN WOODS,

Plaintiff,

v.

COMFORT DENTAL EAST AURORA, a Colorado profit corporation,

Defendant.

___

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
___

This matter arises on **Defendants' Motion for Summary Judgment** [Doc. #29, filed 12/30/2011] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe her pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  UNDISPUTED MATERIAL FACTS[1]

1. From March 2008 through June 2009, four dentists ran the practice at Comfort Dental East Aurora ("Comfort Dental"): Dr. James Parfitt, Dr. Matthew Carlston, Dr. Richard Doerhoff, and Dr. Jeffrey Varner. *Motion*, Ex. 1, ¶ 1.

---

[1]The defendant provides a Statement of Facts that is supported with evidence including affidavits and deposition testimony. The plaintiff disputes many of the defendant's factual statements, but she does not provide any competent evidence to support her version of the facts. I am aware that a plaintiff's complaint may be treated as an affidavit under Fed.R.Civ.P. 56(e) to the extent it contains statements that are based on personal knowledge and those statements have been sworn under penalty of perjury. C.D. Mosier v. Maynard, 937 F.2d 1521, 1524 (10th Cir. 1992). The plaintiff's Complaint is not sworn under penalty of perjury.

2. Dr. Carlston offered the plaintiff a position as a front desk receptionist for Comfort Dental in March 2008.  Id. at Ex. 2, 28:1-29:20.

3. All of the dentists participated in the decision to hire the plaintiff.  Id. at Ex. 3, ¶ 2.

4. The plaintiff is African-American.  Id. at Ex. 2, 39:13-16.

5. The plaintiff was pregnant with her second child when Comfort Dental hired her in March 2008.  Id. at 24:3-11.  She gave birth to her second child in September 2008.  Id. at 39:17-40:11.

6. Comfort Dental did not give the plaintiff any written corrective action during this pregnancy.  Id. at Ex. 3, ¶ 3.

7. The plaintiff became pregnant again in March 2009.  Id. at Ex. 2, 43:19-25.

8. The plaintiff claims that Dr. Parfitt was the first dentist who learned about her third pregnancy when a patient congratulated her in front of Dr. Parfitt in May or June 2009.  Id. at 45:16-46:2; 47:2-6.  She claims that the other dentists learned of her third pregnancy from Dr. Parfitt.  Id. at 133:19-25.

9. The front desk receptionists are responsible for checking patients in and out; answering telephones; pulling and preparing charts for patient appointments; insuring that items from the lab have been received prior to the appointments; and otherwise assisting with duties common for a busy dental office front desk.  Ex. 4, pp. 7-9.

10. At all relevant times, the plaintiff and Yahana Sanchez worked as front desk receptionists.  Id. at Ex. 1, ¶ 2.

11. The plaintiff and Ms. Sanchez did not adequately perform their front desk duties, and the employees who worked in other parts of the office complained.  Id. at ¶ 4.  When the

plaintiff and Ms. Sanchez did not consistently answer the telephone, the other employees who were working with patients, prepping treatment rooms, and performing other job duties had to answer the telephone. Id.

12. The plaintiff spent a lot of time on the telephone with her family members and was advised not to do this. She also surfed the internet while at work. In addition, she would leave the front desk unattended and go to the gas station and other places, sometimes without telling anyone. Id.

13. The plaintiff did not properly prepare patient cases, a critical job duty for the front desk receptionist. Id. at ¶ 3. For example, if a patient was coming in to have a crown seated, the plaintiff was responsible for making sure that the crown had arrived prior to the appointment and, if it had not, she was to contact the lab or reschedule the appointment. If she failed to do so, a patient might make an unnecessary trip to the dental office. On several occasions, the plaintiff did not adequately prepare patient cases, causing unnecessary trips for the patients and lost revenue for the dentist. Id.

14. The plaintiff and Ms. Sanchez were creating new charts for existing patients instead of pulling their charts from the downstairs file room, causing the dentist to be without the patients' prior history. Id. at Ex. 5; Ex. 6.

15. In June 2009, Dr. Parfitt prepared written warnings for the plaintiff and Ms. Sanchez. Id. at Ex. 1, ¶ 2. The plaintiff states that on June 18, 2009, Dr. Carlston gave her a document labeled "Counseling Record" and asked her to sign it. Id. at Ex. 2, 163:10-18. The plaintiff refused to sign the document because she did not agree with it. Id. at 163:16-18.

16. The plaintiff did not receive a reduction in pay as a result of the written warning, and she had the same job duties and worked the same number of hours after receiving the warning. Id. at 129:9-20.

17. Ms. Sanchez received a written warning on June 19, 2009, for the same performance deficiencies for which the plaintiff was given a warning. Id. at Ex. 6; Ex. 7, ¶ 2. Ms. Sanchez is not African-American and was not pregnant when she received the written warning in June 2009. Id. at Ex. 2, 106:9-16; 154:8-24; Ex. 7, ¶ 4. Ms. Sanchez signed the written warning and tried to improve her performance after receiving the warning. Id. at Ex. 7, ¶¶ 3-4.

18. The written warnings advised the plaintiff and Ms. Sanchez that they needed to correct their performance in the following areas:

> 1. Must pull cases in A.M. for the next day and day after. If not there, fax lab to ensure they will be there and let doctor know if there is a problem.
>
> 2. All CP's pulled and done and filled by day's end
>
> 3. No surfing Internet
>
> 4. No personal calls
>
> 5. If there is a chart . . . go downstairs and get it
>
> You are allowed a 10 min. rest period 4 hours into your shift and per Colorado state law.

Id. at Ex. 5; Ex. 6.

19. The plaintiff's written warning addressed expectations that were contained in the Employee Handbook. The plaintiff acknowledged that she was responsible for following the expectations. Id. at Ex. 2, 171:1-174:6.

20.   The written warning had nothing to do with the plaintiff's race or the fact that she was pregnant.  Id. at Ex. 1, ¶ 7; Ex. 3, ¶ 4; Ex. 8, ¶ 3; Ex. 9, ¶ 3.

21.   Comfort Dental has had numerous employees who have been pregnant and who have had babies while employed by Comfort Dental.  Id. at Ex. 1, ¶ 7.

22.   The same dentists that hired the plaintiff gave her the warning.  Id. at Ex. 3, ¶ 2.

The plaintiff filed her Complaint and Jury Demand (the "Complaint") in the Arapahoe County District Court on October 4, 2010 [Doc. #1-1].  The defendant removed the action to this court on November 11, 2010 [Doc. #1].  The Complaint alleges that the plaintiff suffered gender and race discrimination in violation of Title VII of the Civil Rights Act if 1964 when she received the written warning from Comfort Dental.[2]

### III.  ANALYSIS

It is unlawful for an employer to discriminate against an individual based on the individual's race or gender.  42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1).  To establish a claim of race or gender discrimination, the plaintiff has the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); James v. Sears, Roebuck and Co., Inc., 21 F.3d 989, 992 (10th Cir. 1994).  If this burden is met, the burden shifts to the employer to establish a legitimate, nondiscriminatory reason for its conduct.  St. Mary's Honor Center, 509 U.S. at 506-07; James, 21 F.3d at 992.  If the employer meets its burden, the plaintiff must then prove by a preponderance of the evidence that the employer's reasons for its conduct are pretext for

---

[2] The plaintiff's claims for discrimination based on termination from her employment and for defamation have been dismissed [Doc.#17].

intentional discrimination. St. Mary's Honor Center, 509 U.S. at 515-16; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Cone v. Longmont United Hosp. Assoc., 14 F.3d 526, 529 (10th Cir. 1994).

A prima facie case of race or gender discrimination requires a showing that: (1) the plaintiff "is a member of a protected class," (2) the plaintiff "suffered an adverse employment action," (3) the plaintiff was qualified for her job, and (4) the plaintiff "was treated less favorably than others not in the protected class." Turner v. Pub. Serv. Co. of Colo., 563 F.3d 1136, 1142 (10th Cir. 2009).

The defendant asserts that the plaintiff's claim fails because the written warning does not constitute an adverse employment action. *Motion*, pp. 7-8. The Tenth Circuit liberally defines "adverse employment action":

> Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand. Nevertheless, we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action. Crady v. Liberty Nat' Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, ----, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998) (conduct is adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 886 (7th Cir. 1989) (principal's change in assignment was not an adverse employment action despite her increased commute and belief that the public perceived the transfer "as a 'nudge towards retirement'").

Sanchez v. Denver Public Schools, 164 F.3d 527, 532 (10th Cir. 1998) (quotations and citations omitted except where noted).

"A written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status." Haynes v. Level 3 Communications, LLC, 456 F.3d 1215, 1224 (10th Cir. 2006) (emphasis omitted). A change in employment status can be found where the effect of the warning "on the plaintiff's employment status was an immediate placement in an at-risk status" for termination, or if the warning constituted a demotion, a pay change, or a significant modification of responsibilities. Id. at 1224-25.

Here, it is undisputed that the plaintiff did not receive a cut in pay as a result of the written warning, and she had the same job duties and worked the same number of hours after the warning. There is no evidence in the record that the written warning immediately placed the plaintiff in an at-risk status for termination or otherwise effected a significant change in the plaintiff's employment status. To the contrary, the evidence shows that Ms. Sanchez was given the same written warning; worked to improve her performance; and retained her job.[3]

Moreover, the plaintiff has not provided any evidence to show that she was treated less favorably than others not in her protected class. It is undisputed that the written warning had nothing to do with the plaintiff's race or the fact that she was pregnant. It is also undisputed that Ms. Sanchez had the same job as the plaintiff; received the same written warning for performance deficiencies; and is not African-American and was not pregnant at the time.

The plaintiff has failed to create a material fact dispute regarding whether she suffered an adverse employment action and whether she was treated less favorably than others not in her

---

[3] Indeed, Ms. Sanchez became pregnant and returned to work after having a baby in 2011. *Motion*, Ex. 1, ¶ 7; Ex. 7, ¶ 5.

protected class. Accordingly, she has failed to meet her initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED and that judgment enter in favor of the defendant on the plaintiff's remaining claim for discrimination.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated April 25, 2012.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge